IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                    ) | No.  07-10022 - 03, 04, 05 |
| ) | |
| BRANDON J. LALIBERTE, ) | |
| CHARLES LALIBERTE, and ) | |
| ADINA M. DONAGHUE, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**Memorandum and Order**

This matter came before the court on November 15, 2007 for a status and motions hearing.  The court took up the following motions at the hearing: Defendant Charles Laliberte's Motion to Suppress (Doc. 74) and Motion for Release of Brady Materials (Doc. 105).

I.  *Motion to Suppress*.

Defendant Charles Laliberte moves to suppress evidence found during a search of his residence at 3535 6th Street North, Minneapolis, Minnesota.  Although the search was conducted pursuant to a warrant, defendant contends the warrant was invalid because the affidavit in support of it contained false statements and material omissions.  Specifically, defendant contends the agent who submitted the affidavit falsely stated that a property check of the 3635 6th Street residence showed that the residence was "owned by Robert Charles Laliberte."  Defendant contends a check of property records or bank records would have shown that Charles Laliberte owned the house, not his son Robert Charles Laliberte.  In support of his motion, defendant has submitted numerous documents, including a certified copy of a deed filed in Hennepin County,

Minnesota, allegedly showing that the 6th Street property was owned by Charles A. Laliberte. Defendant also contends there were material omissions in the affidavit because it did not disclose that police had found numerous documents in Robert Charles Laliberte's possession showing he had a current address in Avondale, Arizona. Defendant argues that absent such false or misleading information, "there was not one scintilla of evidence that Charles Laliberte was involved with any criminal activity" and no reason to believe that contraband or evidence of a crime would be located at the 3536 6th Street North residence. Thus, he contends, there was no probable cause for the search warrant. Moreover, defendant contends the "good faith" exception of *United States v. Leon* does not apply because a reasonable officer would have known that the affidavit, minus the misleading information, was insufficient to establish probable cause.

Although the Government challenged whether the defendant was entitled to an evidentiary hearing under *Franks v. Delaware*, the Government was prepared to proceed with its witnesses at the November 15, 2007 hearing, and the court elected to hear the testimony of the witnesses.[1] In brief, the evidence showed the following. On Friday, January 19, 2007, a little after 8 p.m. on Interstate 35 in south Wichita, Wichita Police Officer E. Padron made a traffic stop of a Nissan Altima based upon the vehicle's partially obstructed license tag. The driver of the vehicle was Darcy Bauer. The officer smelled marijuana and subsequently obtained consent to search the vehicle. During a search of the interior the officer could see what appeared to be

---

[1] Under *Franks v. Delaware*, 438 U.S. 154 (1978), affidavits supporting search warrants are presumed to be valid and can be challenged only in limited circumstances. An evidentiary hearing on the veracity of the affidavit is required if: 1) the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements or material omissions; and 2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.

packages of controlled substances in the trunk.  A drug-detecting dog subsequently alerted on the vehicle.  The officer was unable to get the trunk open, however, as the trunk latch would not work and the key in Bauer's possession was a "valet key" that would not open the trunk.  (A later search confirmed the presence of approximately 100 pounds of marijuana, 5 kilos of cocaine, and 1 pound of methamphetamine in the trunk.)  Bauer informed the officer that the person to whom the drugs belonged was traveling along about 45 minutes behind her in a purple semi-truck with no trailer and a temporary tag.  She identified the individual as Rob or Robert.  Bauer stated that Robert had paid for the Nissan and then registered the vehicle in her name.

Meanwhile, Wichita police officers located and stopped a purple semi-truck with no trailer about 45 minutes behind Bauer on Interstate 35.  The driver was Robert Charles Laliberte.  In a subsequent search of the truck officers found a key to the Nissan being driven by Bauer.  A number of other items were also found, including a large number of documents.  Robert was in possession of an Arizona commercial driver's license that listed an address of PO Box 1592 in Avondale, Arizona.  He also had a Minnesota driver's license listing his address as 3635 6th Street North, Minneapolis, Minnesota.  Both licenses were current.  The Arizona commercial driver's license was issued on May 23, 2005, and did not expire until the year 2033.  The Minnesota driver's license was issued in March of 2005 and expired in February of 2009.

Wichita police officer Daniel McFarren interviewed Darcy Bauer around 9 p.m. on January 19th.  Among other things, Bauer said she had helped Robert transport drugs from Phoenix to Minneapolis on previous occasions.  She said she had met him in Minneapolis several years earlier and recently agreed to work for him because she needed money.  She said in 2006 she had gone to the Phoenix area and Robert gave her money to purchase the Nissan at an

3

auction. She said on two previous occasions she had driven the Nissan back from the Phoenix area to Minneapolis for Robert and dropped the car off. She said she was paid $5,000 per trip. She specified that on the second occasion she dropped the car off at 3635 6th Street North in Minneapolis, which she believed was the residence of Robert's father, whose name was Charles. She said that a week prior to the instant trip, Robert's brother Brandon had dropped the Nissan off at her residence in Coon Rapids, Minnesota, and told her to drive it to a hotel in the Phoenix area. At some point Robert called her and told her to hurry, which she later learned was due to the fact that the car contained money and people were waiting on it. After spending several days in the Phoenix area, including a stop at what Bauer believed to be Robert's house in Avondale, they began driving back to Minnesota, with Bauer in the Nissan and Robert in the semi-truck. She said she knew they were headed to Minneapolis, although she was not sure where. Bauer was aware there were drugs in the Nissan, although she indicated that Robert told her it was only marijuana.

Officer McFarren prepared certain portions of a WPD incident report, including the listing of Robert Laliberte's address. McFarrin was not sure what address to list because Robert had an Arizona and a Minnesota driver's license, with only a PO box on the Arizona license, so he went and asked Robert Laliberte where he lived. Robert said he lived at the address on the driver's license. When McFarren asked which one, Laliberte said the Minnesota one. McFarren thus listed the 6th Street Minneapolis address for Robert Laliberte on the police incident report. Govt. Exh. 2.

At the suppression hearing, the government presented evidence that when Robert's semi-truck was impounded, officers completed an impounded vehicle receipt which listed Robert's

address as 13823 W. Solano Drive in Litchfield Park, Arizona. The testimony at the hearing was that this information must have been provided to the officers by Robert, and that it may have been the address for the mother of Robert's children.

A Wichita police officer testified at the suppression hearing that the incident reports prepared by the officers were typed up the next day or on Sunday, January 21, 2007. On Monday, January 22, 2007, Lance Aldridge, a WPD officer attached to a DEA task force, sent an e-mail to DEA Special Agent Eric Smith in Minneapolis, Minnesota, concerning the incident. Attached to his e-mail was the WPD incident report (Govt. Exh. 2). No other documents were included. No mention was made in the incident report of Robert having an Arizona license or of documents addressed to Robert at his PO Box in Avondale, Arizona. Included in one of the officer's reports was a general statement that "[w]e also found several quite [sic] a bit of other documentation that was submitted that was found from inside the truck." Smith forwarded the information to Sgt. Randall Olson of the Minneapolis police department. Olson looked over the documents forwarded by Smith. He saw that Robert's address was listed as 3536 6th Street North in Minneapolis and that Bauer had stated in her interview that she had dropped off drugs at that address. Smith ran the name Robert Charles Laliberte through CAPRS (the Minneapolis police computer records system). He found Robert mentioned in seven incidents. In six of those incidents, Robert's address was listed as 3635 6th St. North. One of the incidents listed another address, apparently in Minneapolis. Olson also checked police records pertaining to Charles Laliberte, and found two reported incidents, with Charles' address listed as 3635 6th Street. Olson also ran a search of Hennepin County property records, which showed that the owner of the 6th street residence was Charles A. Laliberte, and that he lived at the residence. A

check of driver's license records also showed Charles' address as 3635 6th Street.

Olson used the information he gathered to prepare an application for a search warrant on the residence at 3635 6th Street. Olson's affidavit in support of his application briefly recounted the circumstances under which the marijuana, cocaine and methamphetamine were found in the Nissan. It also included Bauer's admission of hauling drugs for Robert Charles Laliberte and her admission that on prior occasions she had dropped off the load vehicle at 3635 6th Street. It also noted that Robert Laliberte had been arrested by Minneapolis police on prior occasions for possession of marijuana and weapons. It then stated: "Additionally, I ran a property check of 3635 6th Street North in the City of Minneapolis. 3635 6th Street North is owned by Robert Charles Laliberte." At the suppression hearing, Olson conceded this was an false statement, and that it should have said Charles Laliberte owned the house. Olson testified this was an unintentional mistake arising from the fact that he had all this information pertaining to Robert Charles Laliberte. The affidavit additionally stated that Olson's training and experience showed that narcotics traffickers "frequently keep"[2] detailed records, packaging materials, mailings showing constructive possession, controlled substances, firearms and other items. It alleged there was probable cause to believe such items were being stored at 3635 6th Street North. The affidavit was sworn to by Officer Olson on January 23, 2007, in the presence of Judge Patricia L. Belois, a state district court judge in Hennepin County. Judge Belois issued the search warrant the same day, January 23, 2007. The warrant stated there was probable cause to believe: that the property was used to commit a crime; that possession of the property constitutes a crime; that

---

[2] The affidavit did not allege that drug dealers frequently keep such items "in their residence."

6

the property was in the possession of a person with intent to use such property as a means of committing a crime; and that the property constitutes evidence which tends to show a crime has been committed or that a particular person has committed a crime.

"It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit." *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir.2001) (*citing Franks*, 438 U.S. at 171-72). There is no question here but that the affidavit contained a false statement relating to ownership of the 6th Street residence. But the Government has presented evidence to show that the error was likely due to inadvertence, whether it was a simple failure to adequately review the affidavit before submitting it or an error in transposing or confusing "Robert Charles Laliberte" and "Charles Laliberte." In *Franks* the Supreme Court made clear that it would not extend the exclusionary rule beyond instances of deliberate or reckless misstatements (or omissions), instead leaving a "broad field" for the issuing magistrate to protect Fourth Amendment rights "where police have been merely negligent in checking or recording the facts relevant to a probable cause determination." *Id.*, 438 U.S. at 170. The evidence here showed nothing beyond an innocent mistake or simple negligence in failing to correctly identify Charles Laliberte, and not Robert Charles Laliberte, as the owner of the property. The conclusion that this was an innocent mistake, and not a deliberate or reckless deception, is bolstered by the other record checks conducted by officer Olson, virtually all of which indicated that Robert Charles Laliberte as well as Charles Laliberte resided at the 6th Street address. "A misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, does not invalidate a warrant." *United States v. Colonna*, 360 F.3d 1169, 1174 (10th Cir.), *cert.*

*denied*, 543 U.S. 823 (2004).

The court likewise can find no deliberate or reckless omissions from the affidavit, whether by Officer Olson or others. Defendant points out that the affidavit failed to mention that police had in their possession numerous documents showing an Arizona address for Robert, including a driver's license. The evidence is clear that Officer Olson was unaware of any such documents when he prepared the affidavit. The evidence also showed that such information was likely not forwarded to Olson for two reasons, neither of which suggests a *Franks* violation.[3] First, the police had not had sufficient opportunity to examine and process the numerous documents from Laliberte's truck when the incident report was forwarded and the warrant obtained. Second, even when the "Arizona documents" are taken into account, the Wichita police (as well as officer Olson) had good reason to conclude that Robert resided at the 6th Street residence. In addition to Bauer's statement that Robert used the 6th Street residence to facilitate his drug trafficking, the evidence here shows that Robert specifically told the police when they asked him that he lived at the 6th Street address. Against this backdrop, the fact that Robert also had a commercial driver's license (apparently valid for a 28-year period) and correspondence reflecting an Arizona PO Box does not suggest that officers deliberately or recklessly excluded such information from the materials submitted or the affidavit. In view of the strong evidence of defendant's Minnesota residence, these are not the type of "critical facts" that might warrant an

---

[3] The court recognizes that a deliberate or reckless omission of information incorporated into an affidavit by a government official who is not the affiant can be the basis for a *Franks* suppression. *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). *See also Franks*, 438 U.S. at 164, n.6 ("police could not insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity."). There is simply no evidence to support a finding that such deliberate or reckless conduct occurred in this instance.

inference of reckless or deliberate exclusion. *Cf. DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990). In sum, the omissions complained of by defendant do not support suppression of the evidence under the *Franks* standard.

Of course, suppression under the *Franks* standard requires a defendant to show not only that the false statements or omissions were deliberate falsehoods or made with reckless disregard for the truth, but also that the remaining portion of the affidavit is not sufficient to support a finding of probable cause. In this case, even assuming defendant could meet the first part of his *Franks* burden, the court would nevertheless conclude that the affidavit otherwise provided probable cause for the search. In determining this issue, the court sets aside the allegation that property records showed Robert Charles Laliberte as the owner of the 6th Street residence, and it treats the omission relating to Robert's Arizona license and Arizona correspondence as though it had been included in the affidavit. *See Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (in determining whether affidavit still shows probable cause, false statements are set aside, while omitted information is treated as if it had been included in the affidavit). Even so, the affidavit showed probable cause to search the 6th Street residence. Probable cause to issue a search warrant exists when the totality of circumstances indicate a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). While probable cause requires more than a mere suspicion of wrongdoing, it focuses on probabilities, not hard certainties. *See Mallory v. United States*, 354 U.S. 449, 455 (1957); *Gates*, 462 U.S. at 231. In determining whether probable cause supports a search warrant, the court reviews the sufficiency of the underlying affidavit by looking at the totality of the circumstances and ensuring "the magistrate had a substantial basis for concluding that probable

cause existed." *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir.2001). Under these standards, the affidavit, although it was not particularly thorough, was adequate to support the issuance of a warrant. Regardless of the fact that the house on 6th Street was owned by Charles and not Robert, and even though the police were in possession of documents listing an Arizona address for Robert, the affidavit otherwise showed that Robert had previously used the 6th Street residence as a destination and staging point to facilitate his drug trafficking, and that the 6th Street residence was the likely destination for the current load of drugs being transported by Darcy Bauer. The affidavit thus showed a basis for inferring that Robert had continuing access to the house for use in drug trafficking, regardless of the fact that he did not own it. Moreover, the previous use of the 6th Street residence by Robert in his inter-state drug trafficking runs and the likelihood that the current load was headed for the residence, together with the officer's allegation that traffickers frequently maintain detailed records, packaging materials, additional controlled substances, and firearms to protect their illegal narcotics, all gave rise to a reasonable probability that evidence of Robert's drug trafficking would be found in the 6th Street residence at the time the warrant was issued. Accordingly, the court concludes that the motion to suppress evidence should be denied. In view of this conclusion, the court need not address the Government's arguments concerning good faith under *Leon*.

    II. *Motion for Discovery*.

Based on the statements of counsel at the November 15 hearing, the court determines that the Government has provided defendant Charles Laliberte the materials requested in his Motion for Discovery. The motion is therefore moot.

III.  *Conclusion*.

Defendant Charles Laliberte's Motion to Suppress (Doc. 74) is DENIED.  His Motion for Release of Brady Materials (Doc. 105) is DENIED on grounds of mootness.  IT IS SO ORDERED this   19th     Day of November, 2007, at Wichita, Ks.

                                               s/Wesley E. Brown
                                               Wesley E. Brown
                                               U.S. Senior District Judge